NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4287
_____

UNITED STATES OF AMERICA

v.

JOSE ADAMES,

                                         Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Crim. No. 1-10-00686-001)
Honorable Noel L. Hillman, District Judge
_____

Submitted under Third Circuit LAR 34.1(a)
December 14, 2012

BEFORE:  GREENAWAY, JR., GREENBERG, and COWEN, Circuit Judges

(Filed: January 9, 2013)
_____

OPINION OF THE COURT
_____

GREENBERG, Circuit Judge.

This matter comes on before this Court on an appeal from a judgment of

conviction and sentence entered in this criminal case on November 28, 2011.  A grand

jury returned a one-count indictment charging appellant, Jose Adames (hereinafter

"Adames"), and his wife, Angelita Adames, with a violation of 18 U.S.C. § 286 for

conspiracy to defraud the United States. The indictment arose out of a scheme to obtain and cash federal tax refund checks fraudulently. Overall, the criminal activity allowed Adames and Angelita to cash 102 income tax refund checks with a total value of $668,298 obtained by co-conspirators by filing fraudulent tax returns indicating that refunds were due. Adames obtained these checks from co-conspirators in New York City and Angelita subsequently cashed them at a business called Imperial Check Cashing in Camden, New Jersey. Angelita pleaded guilty, but Adames went to trial and was convicted. The District Court subsequently sentenced Adames to a 33-month custodial term to be followed by a three-year term of supervised release. In addition, the District Court ordered Adames to pay restitution in the amount of $668,298.73, a requirement that he does not challenge on this appeal. In calculating his sentencing guidelines offense level for use in determining the length of the custodial sentence, the Court denied Adames's request that it depart downward from the offense level that it otherwise would reach as Adames contended that he had a minimal or minor role in the offense.

Adames filed a timely appeal from the judgment of conviction and sentence. Though he does not challenge the sufficiency of the evidence to support the verdict, Adames contends that recordings of inculpatory telephone conversations that he had with Edwards Jiminez, a government informant, made without Adames's knowledge or consent, should not have been admitted into evidence at the trial. Jiminez, who was cooperating with the government, made these recordings and testified as a government witness at the trial. Adames contends that "[i]t is difficult to overstate the centrality of [this] testimony . . . to the government's case against Adames [as t]he government's case

2

literally rose and fell, both substantively and procedurally, on Jimenez's credibility [as no other witness] testified to any inculpatory statements by Adames." Appellant's br. at 5. In what Adames describes in his brief as a "curious counterpoint," id. at 14, Adames used a surreptitious recording technique against Jiminez about two years after these recorded telephone conversations when, on January 17, 2011, he recorded, without Jimenez's knowledge, a conversation between the two of them when they were in an automobile. In this conversation Jiminez said that he had cooperated with the government because of the government's pressure on him to do so as he feared that, unless he cooperated, he faced a long sentence on pending criminal charges for passport fraud unrelated to this case.

Prior to the trial Adames sought an order suppressing the recordings of his telephone calls with Jiminez and for this purpose sought a hearing pursuant to United States v. Starks, 515 F.2d 112 (3d Cir. 1975). Under Starks the government had the burden of producing clear and convincing evidence of the authenticity and accuracy of the recordings as a foundation for their admissibility which it could satisfy by supplying "substantial evidence" from which a jury could infer that the recordings were authentic. See United States v. Reilly, 33 F.3d 1396, 1404 (3d Cir. 1994). Starks set forth seven factors for a court to consider in admitting surreptitiously recorded evidence one of which was that "the conversation elicited was made voluntarily and in good faith, without any kind of inducement." Starks, 515 F.2d at 121 n.11.[1]

_____

[1] On this appeal Adames does not challenge the authenticity or accuracy of the transcript of the telephone conversations and he does not contend that the making of the recordings was unlawful. Indeed, he quotes from United States v. Antoon, 933 F.2d 200, 203-04 (3d Cir. 1991), for the principle that, if one party to a conversation consents to its recording,

As Adames requested, the District Court conducted a <u>Starks</u> hearing during which his attorney at a side-bar conference out of the presence of persons who were not parties to the conference, including the case agent and Jiminez, voluntarily revealed that he had a transcript of the previously unrevealed January 17, 2011 conversation between Adames and Jiminez.[2]  Adames requested that Jiminez and the case agent not be advised of the existence of the transcript of the January 17, 2011 conversation until after Jiminez testified on direct examination at the <u>Starks</u> hearing.  Adames made this request as he believed that, if Jiminez did not have an opportunity to review the transcript of the January 17, 2011 conversation before he testified, Adames's cross-examination of him on the <u>Starks</u> voluntariness issue would be more effective.  The District Court denied Adames's request and thus Jiminez was able to review the transcript before he testified. In admitting the testimony regarding the recorded telephone conversations the Court found that Jiminez made the recordings voluntarily.  Following his sentencing Adames filed this timely appeal.[3]

Adames advances three points on this appeal:

_____

the recording is lawful.  Although the government does not raise the point on this appeal, it is difficult to understand why the voluntariness <u>Starks</u> factor is material in a determination of whether a recording was authentic.

[2] The parties do not cite any statute, rule, or court order that required Adames to reveal the existence of this transcript, at least at the point in the proceeding that he did so.  In fact, the government characterizes Adames's action in revealing the tape as an "election." Appellee's br. at 8.

[3] The District Court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

4

I.     The recordings made by Jiminez should not have been admitted as the requirements of United States v. Starks that such recordings be made 'voluntarily and in good faith' were not satisfied.

II.     The District Court violated [Fed. R. Crim. P.] 26.2 and compromised Adames's ability to cross-examine Jiminez by ordering that he be provided with a transcript of a conversation with him recorded by Adames.

III.     Adames should have been granted a downward adjustment as a 'minimal participant' in the scheme.

Br. at 1.

Adames indicates that our standard of review on all three issues is whether the District Court abused its discretion in making its rulings. The government agrees that the evidentiary questions involve abuse of discretion review but contends with respect to the sentencing issue that our standard of review requires that we examine the District Court's decision for clear error. See United States v. Dullum, 560 F.3d 133, 140 (3d Cir. 2009). As a practical matter the distinction makes no difference because our review under either standard leads us to reach the same result.

In starting our discussion we point out that this case is unusual in that the victim of the offense, the United States, apparently was unaware that it had been defrauded until Jiminez, a friend of Adames, reported the scheme to the government. As might be expected, Jiminez's motivation to reveal the scheme was not the product of a desire to serve the public interest. Rather, Jiminez, who had been arrested for passport fraud, hoped that by informing on Adames he would be able to secure a reduction in the length of his own sentence. Indeed, Jiminez's information did lead the IRS to investigate the

5

cashing of refund checks at Imperial during which it uncovered the conspiracy leading to this prosecution.

The background that we have set forth essentially forecloses Adames's challenge to the admission of the telephone conversation recordings. Thus, while Jiminez tried to explain to Adames in his January 17, 2011 conversation that government pressure led him to cooperate in developing the case against Adames, the pressure he felt was nothing more than his perceived need to cooperate for his own benefit. Furthermore, it was Jiminez and not the government that initiated the inquiry into the existence of the conspiracy as the government had not been aware that it had been defrauded until Jiminez advised it of the scheme. Moreover, in testimony that the Court credited, Jiminez stated at the Starks hearing that he recorded the telephone calls voluntarily and that he fabricated his contrary explanation for recording the calls to Adames on January 17, 2011. Therefore, as did the District Court, we regard Jiminez's action in furtherance of his informer's role as voluntary and we cannot possibly hold that the District Court abused its discretion in rejecting Adames's Starks contention. Indeed, even if we exercised plenary review on the issue, we would reach the same result.

In reaching our result we have not overlooked Fed. R. Crim. P. 26.2(a), which Adames brings to our attention and provides:

> After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the government or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony.

6

It is true that Rule 26.2 provides that after a witness has testified on direct examination a party who did not call the witness is entitled to the production of the witness's statements germane to his testimony but the obvious purpose of the rule is to make available the statements for use on his cross-examination. But such use of a witness's statement has nothing to do with the situation here in which Adames did not want Jiminez to know that Adames's attorney had the transcript before Jiminez testified. In this regard, the government surely did not need the statement for cross-examination so that it might have been appropriate to delay its delivery to it until after Jiminez testified. After all, the government was not going to cross-examine Jiminez who was its own witness. Moreover, Adames did not need the Court's aid to obtain the statement for cross-examination as he already had it when he revealed its existence. In fact, Rule 26.2 says nothing about withholding a witness's statements but rather deals with the production of statements. Thus, once Adames made the existence of the transcript of the recording known, the transcript did not become shielded by Rule 26.2, so it cannot be said that the District Court abused its discretion or violated the rule by requiring its production before Jiminez testified.

Finally, we reject Adames's contention that he was entitled to a four-level reduction under U.S.S.G. § 3B1.2 in his offense level because his role in the offense was minimal, and we also reject his alternative contention that he was at least entitled to a lesser offense level reduction because his role was minor. The information available to the District Court at sentencing showed that Adames picked up the checks in New York and took them to Camden where Angelita cashed them. He then returned to New York to

7

deliver the proceeds to his co-conspirators. It is perfectly clear that Adames's participation in the offense was a vital part of the conspiracy and was neither minimal nor minor for, unless the New York co-conspirators had a method to cash the fraudulently obtained checks, they were worthless.

The judgment of conviction and sentence of November 28, 2011, will be affirmed.